# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CURTIS CONWAY BAILEY,

       Defendant-Appellant.

UNPUBLISHED
October 21, 2014

No. 315992
Genesee Circuit Court
LC No. 11-030007-FC

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Defendant, Curtis Conway Bailey, appeals as of right following his jury trial convictions for three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration with victim under 13 years of age) and one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (sexual contact with victim under 13 years of age). Defendant was sentenced to 300 to 600 months' imprisonment for each of the CSC I convictions and 36 to 180 months' imprisonment for the CSC II conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

At the time of trial, the complainant was 13 years old. In 2009 and 2010, when the complainant was 10 years old, she would sometimes stay with her stepfather's parents. Her stepfather was defendant's brother. Defendant had recently moved in with his parents after having lived in North Carolina for a number of years. The complainant alleged that she would pretend to be sleeping and defendant would come and pull down her pajama pants and underwear and touch her vagina. This happened on five or six occasions when she stayed at her grandmother's house. There was also an occasion when defendant stayed at the complainant's house on the night before a trip to Cedar Point. Defendant, who had been sleeping on the couch, came into complainant's bedroom, called his dog off the bed, and proceeded to touch the complainant again. Defendant also placed the complainant's hand on his penis and moved it up and down.

In May 2010, the complainant left two notes for her health education teacher. In the notes, the complainant revealed that her uncle had been touching her. Her parents were getting ready for an extended vacation and the complainant expressed fear at having to stay at her grandmother's house. The teacher reported the notes to Children's Protective Services, who

ultimately referred the matter to the police. The complainant underwent a forensic interview at Weiss Advocacy Center. She also underwent two physical examinations at Hurley Medical Center and McLaren Regional Hospital. The complainant's hymen had a laceration that was compatible with sexual abuse.

At the conclusion of proofs, the jury acquitted defendant of two counts of CSC I and one count of CSC II, but convicted him of three counts of CSC I and one count of CSC II. He was sentenced as outlined above. Defendant now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence of penetration to support his CSC I convictions.[1] We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). "In determining whether sufficient evidence exists to sustain a conviction, [an appellate court] reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014).

MCL 750.520b(1)(a) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . That other person is under 13 years of age." MCL 750.520a(r), defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." Defendant argues that the evidence was insufficient to prove penetration.

Defendant argues that the complainant's testimony demonstrates that she was "unsure" regarding penetration. The following exchange took place at trial:

> *Q.* [by the prosecutor] Okay. With what part of his body would he touch you with?
>
> *A.* His fingers.
>
> *Q.* Okay. And what part of your body would he touch?
>
> *A.* My vagina.
>
> *Q.* Okay. And would that be on top of your pajamas or under – on your skin?

---

[1] Defendant focuses only on penetration as it relates to his CSC I convictions; he does not appear to contest his CSC II conviction.

*A.* Under, on my skin.

*Q.* Uh, would it be on top of your vagina or somewhere else?

*A.* I don't remember exactly.

*Q.* Okay. How did it feel to you?

*A.* I don't remember.

*Q.* Okay. Did you ever have any pain?

*A.* I don't remember.

*Q.* Did he ever put anything inside you?

*A.* Not that I can think of. I don't remember. It was like years ago. I don't remember it that well.

*Q.* What do you remember him doing with his fingers?

*A.* Feeling me.

*Q.* I'm sorry you have to go through this, but tell us how he would feel you with his fingers.

*A.* I don't really know how to explain it.

*Q.* Do the best you can. You're doing fine.

*A.* I don't know.

*Q.* Did you give a statement to investigators about this?

*A.* Yes.

*Q.* And did you describe the incident as fingering?

*A.* Yes.

The complainant testified that when she stayed the night at her grandmother's, defendant "would come in when he thought I was sleeping. He would pull down my pants and he would feel me . . ." She pointed to a diagram of female genitalia to indicate where she had been touched. The complainant testified that defendant would "pull my pants down and he would feel me." When asked about her denial that defendant put *anything* inside her, the complainant clarified that she said defendant did not put anything *other* than his fingers inside her: "I only remember saying no to anything other than his fingers. I don't ever remember saying no to everything.

Although the complainant was apparently squeamish and hesitant to offer particulars of the assault at trial, there was evidence of penetration. The video recording of the complainant's June 8, 2010, forensic interview was played for the jury wherein the complainant clearly explained that defendant "stuck" his fingers inside her and moved his fingers "up and down." She knew his fingers were on the inside because she could feel it and sometimes it hurt. To the extent defendant argues that the complainant was not worthy of belief, this Court will not interfere with the jury's role in determining the weight of the evidence or the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514–515; 489 NW2d 748, amended 441 Mich 1201 (1992. Questions of credibility must be left to the trier of fact. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

Defendant also complains that the physical evidence of penetration was "inconclusive." However, in a prosecution under MCL 750.520b, the victim's testimony need not be corroborated with physical evidence. MCL 750.520h; *People v Phelps*, 288 Mich App 123, 133; 791 NW2d 732 (2010). Therefore, the complainant's statements during her forensic interview and her testimony at trial, standing alone, would have supported defendant's conviction. In addition, although defendant focuses on Dr. Gullekson's acknowledgement that the injury to the complainant's hymen may have been caused by something other than digital penetration, Gullekson made it clear that a lacerated hymen was not the result of normal activity. He testified that "it would have to be something that actually had a projection that would have made a forceful entry into that area that I would think could cause injury." The following exchange took place:

> *Q.* [by defense counsel] So all you can say that asked today is you just don't know?
>
> *A.* All I can say is there is something in the hymen which is compatible with injury, period; that's all I can say.
>
> *Q.* But you could also say it could be other things?
>
> *A.* Other things could have caused the injury?
>
> *Q.* Right.
>
> *A.* That's where the history is important.

The complainant's history, coupled with the irregular physical forensic examination, presented sufficient evidence for a jury to conclude that there was penetration.

### III. RIGHT TO CONFRONTATION

Defendant next argues that evidence of the complainant's Hurley Medical Center records, which included findings by her pediatrician Dr. Sankaran, should not have been admitted into evidence because defendant was deprived of the right to confront the witnesses against him. We disagree.

This Court reviews de novo questions of constitutional law. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). Defendant did not object to the evidence in the trial court; therefore his claims of constitutional error are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear and obvious, 3) and the plain error affected substantial rights". *Id*. at 763. Moreover, "[h]armless error analysis applies to claims concerning Confrontation Clause errors. But to safeguard the jury trial guarantee, a reviewing court must conduct a thorough examination of the record in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (internal quotation marks and citations omitted).

The Confrontation Clause, US Const, Am VI prohibits testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 LEd2d 177 (2004). In *Melendez–Diaz v Massachusetts*, 557 US 305, 324; 129 S Ct 2527; 174 L Ed 2d 314 (2009), the Supreme Court explained: "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." However, a Confrontation Clause issue may arise "if the regularly conducted business activity is the production of evidence for use at trial." *Id*. at 321.

Here, the Confrontation Clause applies to the complainant's medical records because, although the records do not directly implicate defendant by establishing the identity of the perpetrator, the findings of the physical examination supported the prosecution's theory that defendant had penetrated the complainant's vagina with his fingers. However, defendant's argument is still fatally flawed. The records at issue were signed by Sexual Abuse Nurse Examiner Sheri Clair. Clair and Dr. Sankaran performed the physical examination together. Clair testified at trial and was subject to cross-examination. Therefore, defendant's right to confront the witness against him was never compromised.

Moreover, if there was any error in admitting the evidence, the error was harmless. Clair testified that Hurley's emergency room did not have a culpascope that would have been beneficial for the complainant's forensic examination. Clair further testified that at the time of the examination, she had not yet received training in pediatric assault. For those reasons, the complainant was referred to McLaren for a more thorough examination.

It was McLaren physician Dr. Gullekson who provided precise testimony regarding the forensic findings. He testified that the complainant's hymen had "an area of injury that is something that was irregular, which was approximately at eleven o'clock." The laceration was six or seven millimeters in length. There was increased redness. It indicated past injury and would probably be painful. Gullekson testified that "[d]igital penetration could have produced that injury" and that the injury was compatible with sexual abuse. On cross-examination, Gullekson acknowledged that the injury could have occurred as a result of something other than sexual assault. However, "it would have to be something that actually had a projection that

-5-

would have made a forceful entry into that area that I would think could cause injury." Nevertheless, Gullekson "could not by looking at the patient decide how the injury occurred."

Defendant believes that Gullekson's testimony was favorable to defendant and that Sankaran's findings that the complainant's hymen was "missing," that she had a red and sore labia majora and that the vaginal vault was looser than she might have expected in an 11 year old, contradicted Gullekson's favorable testimony. But that is far from the case. Gullekson testified that the complainant's hymen was injured and that the injury was not the result of normal activity. Instead, the injury was one requiring forceful entry. Gullekson, not Dr. Sankaran, provided the most damning evidence regarding penetration. Therefore, defendant has failed to show that the outcome of trial would have been different had the evidence been excluded.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for failing to object to the admission of the Hurley Medical records that contained Dr. Sankaran's findings. We disagree.

There was no *Ginther*[2] hearing on the issue; therefore, the Court's review is limited to errors apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

To prevail on a claim of ineffective assistance of counsel, a defendant must "show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Trial counsel's deficient performance prejudices a defendant when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 687; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 600. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Declining to raise objections can be consistent with trial strategy. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

As previously discussed, because Clair (who assisted Dr. Sankaran at Hurley) testified at trial and was subject to cross-examination, defendant's right to confrontation was not compromised. As such, defense counsel cannot be ineffective for failing to raise futile or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Even if counsel's failure to object fell below an objective standard of reasonableness, defendant must show that, but for counsel's error, there was a reasonable likelihood that the outcome of his trial would have been different. Given the complainant's testimony, the various statements she made during the investigation, and the physical evidence found by Dr. Gullekson, there was ample evidence of defendant's guilt independent of Dr. Sankaran's comments. Therefore, defendant has failed to establish that, but for trial counsel's failure to object, the outcome of his trial would have been different. Defendant is not entitled to reversal on his claim of ineffective assistance of counsel.

## V. IMPROPER REHABILITATION EVIDENCE

Defendant argues that the trial court erred when it permitted the records custodian to testify regarding the complainant's prior statements to medical personnel. We disagree.

Defendant acknowledges that defense counsel did not object to the evidence and that his claims must be reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Wyntis Hall testified that she was the records custodian at Hurley Medical Center. The complainant's emergency room record and a forensic report were records kept in the regular course of business at Hurley. Defense counsel did not object to admitting the records into evidence, even when directly asked. Hall read the history of assault portion of the report into the record:

> Date of assault approximately one month ago. Time of assault around midnight. Brief history of assault, patient states I was [at] [G]ramma Cheryl's house and whenever I stay the night I sleep in his room across from the place where you sleep when you stay the night. I think at around midnight he would come and pull my pants down to my knees and start touching me.

The record indicated that the complainant's labia majora was red and tender to the touch. The hymen was missing. Hall read the medical forensic examination into the record:

> He would start touching me he didn't know I was awake. He put his fingers inside me. This has been happening for around a year and a half. He does this when I stay at Grandma Cheryl's, um, [G]randma Cheryl's buyer [sic] house. He stayed at our house once when we [were] going [to] Cedar Point; this was in July 2009, he always did the same thing. This has happened about five or six times in a year and half. Per mom Crystal [Viar], Dr. Sankaran Flint Children's Center, stated that the hymen was missing and the vaginal vault was looser than she would like to see.

Defendant appears to argue that the trial court erred in admitting the complainant's medical records in order to bolster her testimony and combat the defense's allegation that the complainant made up the allegations because she preferred to stay with her other grandmother while her parents vacationed. There is absolutely nothing in the record to indicate that the records were admitted as rehabilitation evidence under MRE 801(d)(1)B.

MRE 801(d)(1)(B) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . ." However, MRE 801(d)(1)(B) has no application here. MRE 803(4) provides that that the following is not precluded by the hearsay rule:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Because the medical records were admissible under MRE 803(4) as a statement made for purposes of medical treatment or medical diagnosis, defendant's bolstering argument fails.

## VI. PROSECUTORIAL MISCONDUCT

Finally, defendant argues that he was deprived of a fair trial when the prosecutor appealed to the jury's sympathy. We disagree.

"Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant admits that challenged statement was not preserved by contemporaneous objections and requests for curative instructions; therefore, appellate review is for outcome-determinative, plain error. *Carines*, 460 Mich at 763–764. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. *Id.* at 63-64. Claims of prosecutorial misconduct are reviewed on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial resulting in prejudice to defendant. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. *Unger*, 278 Mich App at 236. While a prosecutor may not vouch for the credibility of a witness with the implication that the prosecutor has special knowledge of the truthfulness of that witness, a prosecutor may argue that the defendant or a witness is worthy or not worthy of belief. *Dobek*, 274 Mich App at 66. "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001).

During closing arguments, the prosecutor stated:

> Think this ten year old dropped these notes in the box knowing there's gonna be shockwaves at ten years old; she knew there was gonna be shockwaves when those – when these notes hit the box, okay. She's making all this up; no. She's gonna go through all this [sic] physical exams and have somebody prod on her genitals; making it up, no.

> ***

> Even as reluctant as we saw her sitting here, she came forward and said what he did; the evidence has come back on him. Don't make her go through all this – don't make her go through all this all this, for nothing, please. Thank – thank you.

Viewing the prosecutor's argument in the context in which it was made, it is clear that the prosecutor was not so much urging the jury to sympathize with the complainant as arguing that the complainant was worthy of belief. The prosecutor pointed out that it would be incredible for a 10-year-old child to subject herself to forensic physical examination and testifying at court if the allegations had been made up. Additionally, even if the prosecutor's statement was an improper appeal to the jury's sympathy, there is no indication that a prompt objection and curative instruction would have insufficiently cured the statement's prejudicial effect. Here, the prosecutor's isolated remarks were not blatantly prejudicial, but were instead part of a larger, proper argument regarding the complainant's credibility. On this record, the prosecutor's arguments did not affect the outcome of defendant's case.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly