*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DENNIS RAY FARMER, JR.,

       Defendant-Appellant.

UNPUBLISHED
June 11, 2020

No. 345496
Kalamazoo Circuit Court
LC No. 2017-001992-FH

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of domestic assault (third offense), MCL 750.81(5). He was sentenced as an habitual offender, fourth offense, MCL 769.12, to 3 to 15 years' imprisonment. Finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant and the victim[1] were romantically involved and had a child together in March 2016. The victim lived with the child in Kalamazoo and had sole legal and physical custody. Just

---

[1] The victim did not testify at the preliminary examination or at trial. Although the victim's mother testified at the preliminary examination, she did not appear at trial. However, her preliminary examination testimony was admitted at trial in light of the trial court's finding of due diligence. Consequently, the prosecution also sought to prove the charge by admitting statements made by the victim to the 911 dispatcher, the responding police officer, and other police officers that were dispatched to respond to prior 911 calls made by the victim for additional assaults by defendant. Further, the prosecutor sought to call CW, defendant's former girlfriend, who was also assaulted by defendant during their relationship and called the police for help. Although defendant challenged this evidence as hearsay evidence for which an exception did not apply and as a violation of the Confrontation Clause, the trial court admitted the evidence.

before 3:00 a.m. on December 21, 2017, the victim banged on the door to her mother's apartment. The victim's mother testified[2] that the victim was crying and screaming, was soaking wet and dirty, was bruised, and had a cut on her forehead. The top piece of the victim's hair weave and her glasses were missing. The victim told her mother that defendant assaulted her and took her child and that she was afraid of what was going to happen to the child. Within moments of entering the apartment, the victim used her mother's phone to call 911. According to the victim's mother, the victim was shaking, pacing, hysterical, scared, and worried about the child while she was making the call.

The 911 dispatcher testified[3] that the victim's voice sounded "upset and shaky," and she requested assistance. The victim reported that defendant forced her and her daughter into his car, that he beat her up "real bad," that he dragged her out of the car and beat her, and that he "was in the car driving." The 911 dispatcher interjected and began asking questions designed to determine what had happened, where defendant might have taken the child, and whether the victim needed medical assistance. In response to questions from the dispatcher, the victim said that defendant took the child from her sister's apartment, that she followed defendant to his car, that defendant forced her into the backseat when she attempted to retrieve the child, and that defendant drove off with her and the child. Defendant drove around then dragged her out of the car by her hair, beat her all over her body, and drove off "5 minutes ago." The victim said that her glasses were missing, but she was able to walk to her mother's apartment. She told the dispatcher that she needed an ambulance, that she wanted to go to the hospital, and that she was worried about her daughter. She said that she was "gonna go crazy," and she asked for help in finding her daughter.

Deputy Michael Hill arrived at the victim's mother's apartment shortly after 3:00 a.m. to find that the victim was in the ambulance. She was emotional, upset, and frantic, and had bruising, contusions, and abrasions on her face, hairline, and forehead. The victim's forehead was swollen and had a knot, and she had a bite mark and scratches and lacerations on her arm. Because the victim was unavailable for trial, Deputy Hill testified to the victim's account of the events provided during his interview with her shortly after the assault. Specifically, the victim said that defendant took her child from her sister's apartment around midnight, and when she tried to prevent defendant from taking the child, he forced her into the backseat of his car with the child locks activated. The victim also reported that defendant drove around for about two hours, but stopped frequently to assault her in the backseat where he would punch, kick, and bite her during each stop. The victim said that she was either pushed out of the car or got out on her own and that she walked to her mother's apartment. A sippy cup and a child's sock were found in the parking lot in the area where the victim said that the initial assault had taken place.[4] Photographs of the victim's injuries were introduced, and Deputy Hill testified that the victim's injuries were consistent with the victim's version of events.

---

[2] A redacted recording of her preliminary examination testimony was played for the jury.

[3] The victim's 911 call was played for the jury.

[4] Although the police were alerted to "be on the lookout" for the child, defendant apparently returned her to the sister's apartment.

After arriving at the hospital, the victim told the emergency room physician that she was assaulted by the father of her child and that he bit, hit, and choked her over the course of several hours just prior to her arrival at the hospital. The victim had swelling, bruises, and evidence of blunt force trauma across her forehead, and she had abrasions on her left brow and forehead. Medical tests did not reveal any fractures, but the victim had soft tissue injuries to her neck, one fresh adult bite mark on her left shoulder, and evidence of bite injuries in various stages of healing across all four of her extremities.

Defendant's former girlfriend, CW, testified about three incidents of domestic violence involving defendant in November 2013, December 2013, and February 2015. During each incident, defendant became angry, an argument ensued, and defendant assaulted CW. Additionally, two police officers testified about statements made to them by the victim when she made other 911 calls for assistance. Officer Ronald Maynard testified that on July 21, 2017, he responded to the victim's apartment and found her crying and visibly upset, with an injury to her mouth. The victim said that defendant had entered her apartment through an unlocked bedroom window, that she told him to leave, and that he flipped over and shattered a glass coffee table before he hit her in the face several times with a closed fist. The victim reported that she was able to make her way into a bedroom and close the door, but defendant pushed the door open, struck her several times, and blocked her exit from the room. In response, the victim struck defendant with a full-length glass mirror, causing it to break. Photographs of the victim's injuries, the broken coffee table, and the broken mirror were admitted. According to Officer Maynard, the victim's injuries were consistent with her account of the incident.

Officer Kevin Seckler testified he was dispatched to the victim's apartment at 9:07 a.m. on December 10, 2017, and that he arrived to find the victim tense, agitated, and upset. The victim said that defendant had come to her apartment the night before to bring supplies for the child and, after coming inside the apartment to see the child, would not leave. The next morning, an argument ensued and defendant punched her, bit her, and strangled her. Officer Seckler observed bite marks on the victim, and the victim reported bite marks on her stomach and thighs and scratches "all over." Officer Seckler said that the victim's injuries depicted in photos admitted at trial were consistent with the victim's account of the incident. Following the admission of this evidence, defendant was convicted as charged. On appeal, defendant contends that the trial court's evidentiary rulings were erroneous.

## II. ADMISSIBILITY OF EVIDENCE UNDER MRE 803(2) AND MRE 803(4)

### A. STANDARD OF REVIEW

Defendant argues that the trial court denied him his right of confrontation when it admitted the victim's out-of-court statements made to her mother, to the 911 dispatcher, to Deputy Hill, and to the emergency room doctor. Further, defendant submits that the statements were not properly admitted as excited utterances and as statements made for purposes of medical treatment. We disagree.

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612

(2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). The trial court's findings of fact in support of an evidentiary ruling are reviewed for clear error. *People v Barrera*, 451 Mich 261, 269; 547 NW2d 280 (1996). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008) (citation and quotation marks omitted). Even if admitted in error, such an error "does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation and quotation marks omitted).

Generally, "whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). When the issue is unpreserved, however, it is reviewed for plain error affecting the defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the defendant was actually innocent and the plain error caused the defendant to be convicted or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings regardless of the defendant's innocence. *Roscoe*, 303 Mich App at 648.

## B. APPLICABLE LAW

A statement that falls within the definition of hearsay may not be introduced at trial unless it is deemed admissible under one of the exceptions to the general rule against hearsay. MRE 802. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v Dendel (On Second Remand)*, 289 Mich App 445, 452; 797 NW2d 645 (2010). Under MRE 803(2), a hearsay statement is not excluded, irrespective of the availability of the declarant, if it is an excited utterance, i.e., a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "A statement is admissible under this exception if (1) there was a startling event[5] and (2) the resulting statement was made while the declarant was under the excitement caused by that event." *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). The rationale for this exception is that "a person who is still under the 'sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance

---

[5] The existence of a startling event or condition is a question of fact that a trial court must decide before it may admit a statement under MRE 803(2) as an excited utterance. *People v Barrett*, 480 Mich 125, 133; 747 NW2d 797 (2008.)

will be spontaneous and trustworthy.' " *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998), quoting 5 Weinstein, Evidence (2d ed), § 803.04[1], pp 803-819; *People v Kowalak (On Remand)*, 215 Mich App 554, 557; 546 NW2d 681 (1996). "The pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *People v McLaughlin*, 258 Mich App 635, 659-660; 672 NW2d 860 (2003). "It is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule. The question is not strictly one of time, but of the possibility for conscious reflection." *Smith*, 456 Mich at 551 (citation omitted). There is no express time limit for excited utterances. *Id*. at 551-552.

Under MRE 803(4), a statement is not excluded by the hearsay rule if it is "made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). Furthermore, "the identification of the assailant is necessary to adequate medical diagnosis and treatment." *Id*.

The federal and state constitutions afford an accused the right "to be confronted with the witnesses against him." US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). "The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (internal citation, quotation marks, and brackets omitted; emphasis in original); see also *People v Bushard*, 444 Mich 384, 391; 508 NW2d 745 (1993). Whether an out-of-court statement is testimonial or nontestimonial is therefore a crucial inquiry. Statements are considered nontestimonial when they are made "in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police to meet an ongoing emergency." *Davis v Washington*, 547 US 813, 813-814; 126 S Ct 2266; 165 L Ed 2d 224 (2006). However, statements made in the course of police interrogation are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. Another factor to consider when addressing testimonial statements is "the informality of the situation and the interrogation," with a statement given in a formal interrogation setting with the police more likely to be characterized as testimonial, whereas a statement given under a less formal manner of inquiry is less likely to reflect that the primary purpose of such questioning was aimed at securing testimonial evidence against the defendant. *Ohio v Clark*, ___

US ___; 135 S Ct 2173, 2180; 192 L Ed 2d 306 (2015) (quotation marks and citation omitted). Also relevant is the identity of the person to whom the statement is made, because "[s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id*. at __; 135 S Ct at 2182 (emphasis added). "To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements nontestimonial, [reviewing courts] objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v Bryant*, 562 US 344, 359; 131 S Ct 1143; 179 L Ed 2d 93 (2011) (citation omitted). The pivotal question the reviewing court must ask "is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to creat[e] an out-of-court substitute for trial testimony." *Clark*, ___ US at __;135 S Ct at 2180 (quotation marks and citation omitted; alteration in original).

## C. SPECIFIC CHALLENGES TO THE VICTIM'S STATEMENTS ON DECEMBER 21

### 1. STATEMENT MADE TO THE VICTIM'S MOTHER

Defendant argues that the victim's statements to her mother were not admissible as excited utterances because the victim was not under the excitement of the startling event and had time to "contrive a story to accuse" defendant of assaulting her. Applying the rules set forth above, the victim's statement constitutes an excited utterance because it was made approximately five minutes after she was assaulted and defendant drove off with the child. Though it was made in response to a question asked by her mother, i.e., what happened, the immediate nature of the exchange qualified as an excited utterance. It was made while she was under the stress of excitement caused by a startling event, there was no time to contrive or misrepresent what had happened, and the statement was relating to the startling event. Additionally, there was no violation of defendant's confrontation rights because the statement made to her mother, not law enforcement personnel, was nontestimonial in nature. The statement was made approximately five minutes after she had been assaulted and left on the side of the road while defendant drove off with the child over whom she had sole legal and physical custody. These circumstances reflect a statement made during an ongoing emergency, not to assist in a potential prosecution. The trial court did not abuse its discretion in admitting the victim's statement to her mother.

### 2. STATEMENTS MADE DURING THE 911 CALL

Defendant acknowledges that the purpose of the victim's 911 call was to seek assistance because she had been assaulted, but he claims that the victim's statements during the 911 call were improperly admitted as excited utterances because the victim was no longer under the excitement caused by the assault and, therefore, the primary purpose of her statements was to establish past events relevant to later prosecution. The victim's statements to the 911 dispatcher qualified as an excited utterance because defendant beating the victim and driving off with her daughter could be considered a startling event. Furthermore, the victim was still under the excitement caused by the incident because defendant drove off with her child, and she was unaware of the whereabouts of the child when she made the call. The trial court did not abuse its discretion by admitting the victim's 911 call.

The admission of the 911 call did not violate defendant's confrontation rights. When "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the" Confrontation Clause. *Bryant*, 562 US at 357. The recording of a 911 call made to report an assault that identifies the assailant who had just fled the scene is not testimonial. *Davis*, 547 US at 828. The victim was not acting as a witness or testifying when she called 911. She was injured, needed medical assistance, and was gravely concerned about her child. The primary purpose of the victim's 911 call was to report, and get a response, for an ongoing emergency and, therefore, the Confrontation Clause did not preclude the admission of the recording. *Bryant*, 562 US at 359.

### 3. STATEMENTS TO DEPUTY MICHAEL HILL

Defendant argues that the victim's statements to Deputy Hill were not admissible as excited utterances because the statements were not made in temporal proximity to the startling event and because the victim could have reasonably expected that her statements would be used to prosecute defendant. He also argues that an ongoing emergency did not exist when he drove off with the child because he is the child's father. There can be no doubt that being physically assaulted and having your attacker drive off with your child immediately after the assault qualifies as a startling event. The victim's statements had sufficient indicia of reliability because of their close temporal proximity to the startling event the victim described. Deputy Hill testified that he located the victim in the back of an ambulance shortly after the dispatch and she was still very emotional, upset, and frantic, further demonstrating that her statements occurred while "under the stress of excitement caused by the startling event." The trial court did not abuse its discretion by determining that the victim's statements to Deputy Hill were excited utterances.

Relatedly, defendant claims that the admission of this testimony violated his right of confrontation because the deputy posed questions to gain information. However, an objective view of the evidence, in light of defendant's assault of the victim and his driving off immediately thereafter with the child, presented a continuing danger to the child and the victim's statements were necessary for the police to assess the present emergency and, therefore, nontestimonial in nature. Therefore, the Confrontation Clause did not preclude admission of the testimony.

Even assuming that the trial court erred by admitting the hearsay testimony of Deputy Hill regarding the victim's statement, the erroneous admission of the hearsay testimony is harmless if the testimony is cumulative to other properly admitted evidence. *People v Crawford*, 187 Mich App 344, 353; 467 NW2d 818 (1991). Deputy Hill's testimony was cumulative to the testimony of the 911 dispatcher, which was properly admitted into evidence. Similarly, even if the admission of the testimony violated defendant's right of confrontation, it is clear that any error was harmless beyond a reasonable doubt in light of the other legally admissible evidence that established defendant's guilt. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (harmless error analysis applies to claims concerning Confrontation Clause).

### 4. STATEMENTS TO THE EMERGENCY ROOM DOCTOR

Defendant argues that the trial court abused its discretion when it allowed the emergency room doctor to testify regarding statements made by the victim during her medical examination in the emergency room. He simply asserts that the version of events that the victim provided to the

doctor was unnecessary for her medical treatment because she "had a motive to lie, and the examination was conducted as part of the investigation." There is no factual support for defendant's assertion that the victim had a motive to lie and that the examination was conducted as part of the investigation, nor does defendant explain why the victim's version of events was unnecessary for her medical treatment. Defendant fails to develop a meaningful argument supported by facts and law. This argument has been abandoned. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

Nonetheless, the victim described an assault over the span of two hours during which she was bit, hit, and choked, and she reported pain in her shoulder, around her face, and in her neck. The doctor observed swelling, multiple contusions, and abrasions on the victim's face. The victim's statements were reasonably necessary for diagnosis and treatment of the victim's physical injuries, as they assisted the doctor in determining the need to perform imaging of the victim's head and neck. In addition, the victim's identification of the child's father as the person who committed the assault was relevant because "the identification of the assailant is necessary to adequate medical diagnosis and treatment." *Meeboer*, 439 Mich at 322. Additionally, there is nothing in the record to indicate that the victim's statements to the doctor were fabricated or that she had any motive to fabricate them. The record establishes that the victim's statements to Dr. Ledesma were trustworthy and provided for the purpose of diagnosis and treatment of injury. Therefore, they were admissible under MRE 803(4).

With respect to defendant's argument that admission of the victim's statements to the doctor violated his rights under the Confrontation Clause, statements are testimonial if the "primary purpose" of the statements or the questioning that elicits them "is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 US at 822. The victim was taken to the hospital by ambulance with visibly apparent injuries, thereby establishing the necessity of a medical evaluation to meet an ongoing emergency. There is nothing in the record to suggest that the police were present during the medical examination. The circumstances indicate that the victim's statements to the doctor were for the primary purposes of diagnosing her medical condition and determining appropriate treatment options, not for the purpose of prosecuting a case against defendant. Accordingly, the victim's statements to the doctor were not testimonial.

### III. ADMISSIBILITY OF FORMER TESTIMONY UNDER MRE 804(B)(1)

Defendant argues that the trial court abused its discretion in admitting the victim's mother's preliminary examination testimony under MRE 804(b)(1) without an adequate showing of due diligence on the part of the prosecution to secure her presence for trial. He also argues that the testimony was not admissible because he did not have a similar motive to develop testimony at the preliminary examination and that admission of the evidence violated his right of confrontation. The trial court's determination regarding due diligence is reviewed for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). The trial court's decision to admit evidence is also reviewed for an abuse of discretion. *Chelmicki*, 305 Mich App at 62.

The trial court admitted the mother's preliminary examination testimony pursuant to MRE 804(b)(1) after determining that she was unavailable to testify at trial. MRE 804(b)(1) provides that the following type of evidence is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

For purposes of this rule, "unavailability" includes a situation in which the declarant

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown. [MRE 804(a)(5).]

The admission of preliminary examination testimony at trial does not violate a defendant's right of confrontation if (1) the witness is unavailable to testify at trial, (2) the prosecution can demonstrate due diligence in trying to produce the absent witness, and (3) the testimony meets satisfactory indicia of reliability. *People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998). In accordance with MRE 804(a)(5), the test for due diligence "is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*. at 684.

On July 30, 2018, the day before a settlement conference, the mother told the prosecutor that she was reluctant to testify, but that she would testify. When the prosecutor called the mother the following day as prearranged, she did not answer her phone and her voice mailbox was full. The prosecutor tried to call the mother again multiple times over the next several days, each time leaving a message urging her to accept the subpoena. The prosecutor presented a "due diligence log" from the Kalamazoo County Sheriff's Department documenting its efforts to personally serve the mother. The prosecutor also said that officers had gone to the mother's residence numerous times—one time taping the subpoena to the door and later returning to find that it had been removed. The most recent attempt, on August 6, 2018, produced no answer at the door even though the officer could hear someone inside.

With regard to due diligence, the trial court found that there were "well over 10 attempts" to serve the mother starting on July 30, 2018 through August 6, 2018, with more than one attempt on some of those days. On one occasion when the mother was contacted by phone, she told the officer to stop coming to her home, and she hung up after saying that she was not interested in pursuing the case. The trial court noted that it was not until after the settlement conference that the mother actively resisted service. The trial court found that diligent efforts were made to serve the mother, that she was resisting service, and that she was an unavailable witness.

There is no indication on this record that the prosecution had any reason to believe that the mother would become uncooperative until she failed to return the prosecutor's July 31, 2018 phone call. The prosecutor continued to attempt to contact her, and the police made more than 10 attempts to serve her with a subpoena between July 30, 2018 and August 6, 2018. Although defendant argues that the prosecution should have obtained an arrest warrant, the test is one of reasonableness and whether diligent good-faith efforts were made, not whether more stringent efforts would have produced the witness. The trial court did not abuse its discretion in concluding that due diligence had been demonstrated and that the mother was unavailable for trial.

In light of the witness's unavailability, MRE 804(b)(1) permits the trial court to admit into evidence her former testimony from the preliminary examination if defense counsel had an opportunity and similar motivation to develop her testimony on cross-examination. *People v Meredith*, 459 Mich 62, 66-67; 586 NW2d 538 (1998). When the court rule is satisfied, use of the preliminary examination testimony does not violate a defendant's constitutional right to confront witnesses.

The United States Supreme Court has recognized that while a preliminary examination "is ordinarily a less searching exploration into the merits of a case than a trial," the Confrontation Clause can be satisfied if a defendant's cross-examination of the witness at the preliminary examination was not significantly limited in scope or nature and the witness was actually unavailable at trial. *California v Green*, 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970). "[P]rior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." *Crawford*, 541 US at 57. The constitutional right of confrontation solely guarantees an opportunity for effective cross-examination, not cross-examination that is effective to whatever extent and in whatever way a defendant wishes. *Owens*, 484 US at 559.

Here, defendant does not dispute that he had an adequate opportunity for effective cross-examination of the mother and that the examination was not limited in scope; rather defense counsel chose not to cross-examine the mother. Preliminary examination testimony can be presented at trial if the witness is unavailable and there was an adequate *opportunity* for effective cross-examination of the witness at the preliminary examination. *Crawford*, 41 US at 57; *Nunley*, 491 Mich at 698.

Defendant argues that his motive to develop the testimony of the witness at the preliminary examination was vastly different than it would have been at trial, that the burden of proof was different between the two proceedings, and that he did not, in fact, cross-examine the witness. Among the factors to determine whether a party had a similar motive to examine a witness at the prior proceeding are:

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007).]

The trial court determined that the preliminary hearing and the trial are similar in purpose—despite the different burden of proof, the testimony at issue was from a criminal hearing pertaining to this case, that defendant's motive to develop or challenge the mother's testimony would be the same or similar at the preliminary hearing, and that defendant in fact had the opportunity to develop or challenge her testimony.

The purpose of the preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (quotation marks and citation omitted). The prosecution's

purpose in presenting the mother's testimony at the preliminary examination and at trial was to show that defendant committed the charged crimes. Thus, defendant had an "interest of substantially similar intensity" in proving or disproving her testimony at the preliminary examination as he did at trial. *Farquharson*, 274 Mich App at 278. Furthermore, despite the lower burden of proof at a preliminary investigation as compared to trial, defendant had a similar motive to cross-examine the mother, i.e., to show that she could not credibly and reliably testify as to what the victim told her. Because the same issues were at stake in the preliminary examination and the trial, defendant had a similar interest in the issues relative to the mother's testimony. Defendant had every reason to make any viable challenges at the preliminary examination to prevent the case from being bound over for trial.

Because the witness was unavailable, and because defendant had "both the 'opportunity' and a 'similar motive' to develop" the mother's testimony, her preliminary examination testimony was admissible under MRE 804(b)(1). *Meredith*, 459 Mich at 67. Therefore, the trial court did not abuse its discretion in allowing the preliminary examination testimony to be read at trial after finding the witness unavailable, and defendant's right of confrontation was not violated.

## IV. ADMISSIBILITY OF EVIDENCE UNDER MCL 768.27B(1) AND MCL 768.27C(1)

Defendant asserts that he was denied a fair trial by the admission of the testimony from CW, his former girlfriend, regarding other acts of domestic violence under MCL 768.27b(1) because the evidence served only to demonstrate defendant's bad character, was highly prejudicial under MRE 403, and violated his right of confrontation because hearsay statements were elicited. He also asserts that the victim's hearsay statements regarding other domestic assaults defendant perpetrated against her were not trustworthy and were unfairly prejudicial and that the admission under MCL 768.27c(1) was improper and violated his right to confront the witnesses against him. We disagree.

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *Chelmicki*, 305 Mich App at 62. An unpreserved evidentiary claim is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763. "Whether the admission of evidence would violate a defendant's constitutional right of confrontation is a question of law that we review de novo." *Dinardo*, 290 Mich App at 287.

### A. TESTIMONY UNDER MCL 768.27(B)(1)

When a defendant is accused of an offense involving domestic violence, "evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under" MRE 403. MCL 768.27b(1). "This statutory language clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (quotation marks omitted). Under the plain statutory language, "evidence of the defendant's commission of other acts of domestic violence" was conditionally admissible. MCL 768.27b(1). Specifically, CW's testimony about defendant's assaults on November 6, 2013, December 2, 2013, and February 7, 2015, related to "other acts of domestic violence" under MCL 768.27b(6)(a)(*i*);

MCL 768.27b(6)(b)(*iv*).  Therefore, CW's testimony regarding defendant's prior physical acts were substantively admissible under MCL 768.27b(1) "for any purpose for which [they are] relevant, if [they are] not otherwise excluded under" MRE 403.  MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

With respect to probative value, evidence of prior acts of domestic violence "can be admitted at trial because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' " *Cameron*, 291 Mich App at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).  Evidence is not "unfairly prejudicial" simply because it is damaging; rather, the term

> refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.  Moreover, admission of evidence is unfairly prejudicial when . . . the danger exists that marginally probative evidence will be given undue or preemptive weight by the jury.  [*Cameron*, 291 Mich App at 611 (quotation marks, citations, and brackets omitted).]

"[E]vidence offered against a criminal defendant is, by its very nature, prejudicial to some extent." *People v Propp*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 343255); slip op at 15. Our Supreme Court has explained that "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012) (emphasis added).[6]  However, "[t]his does not mean . . . that other-acts evidence admissible under MCL 768.27a [or MCL 768.27b] may never be excluded under MRE 403 as overly prejudicial." *Watkins*, 491 Mich at 487.  In determining whether to exclude evidence under MRE 403, a trial court may properly consider the following nonexhaustive factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id.* at 487-488 (citation omitted).]

Here, CW testified that she and defendant were in a dating relationship for approximately five years.  When she was living in a dorm, defendant became upset when CW made her wait too long in the lobby area, and an argument ensued.  The argument became physical, and defendant shoved CW's head down, hit her in the face near her eye with a stick, and tried to rip out her eyebrow piercing.  A police report was filed and photographs of CW's injuries were taken. Another incident happened in December 2013.  CW was outside defendant's home and attempted

---

[6] In *Watkins*, the Supreme Court analyzed the interaction between MRE 403 and MCL 768.27a(1), which allows evidence of certain past offenses against a minor to "be considered for its bearing on any matter to which it is relevant."

to get away from him when he pulled her back. A stranger came to her rescue, and the police were again called. A third incident occurred in February 2015, when defendant forced his way inside CW's apartment, pushed her into a room, punched her in the face, and left.

Defendant's argument pertaining to this issue fails to explain how the evidence of the domestic assaults involving CW injected any *unfair* prejudice. None of the *Watkins* factors weigh in favor of disallowing the evidence of the prior domestic assault incidents. The incidents and the act charged in this case are similar. In each incident, defendant and his girlfriend argued and defendant escalated the argument to physical assault. The incidents occurred within a four-year period, there was no suggestion of an intervening act, and CW's testimony was reliable, given the photographs that were admitted illustrating her injuries and the police reports memorializing the incidents. In short, the admission of the other acts of domestic violence against CW revealed a pattern and provided a more complete picture of defendant's history and was relevant to show that he had a propensity to assault his girlfriends, and the "prejudicial effect of [the] other-acts evidence did not stir such passion as to divert the jury from rational consideration of [defendant's] guilt or innocence of the charged offenses." *Cameron*, 291 Mich App at 611-612. Therefore, the trial court did not abuse its discretion by admitting evidence of defendant's domestic assaults on CW.

## B. TESTIMONY ABOUT THE VICTIM'S STATEMENTS REGARDING OTHER ACTS OF DOMESTIC VIOLENCE

Defendant's challenge to the victim's hearsay statements regarding other domestic assaults he perpetrated against her as untrustworthy, unfairly prejudicial, and a violation of his right of confrontation is also without merit.

Hearsay is generally not admissible at trial, unless an exception applies. MRE 802. MCL 768.27c offers one such exception. MCL 768.27c allows for the admission of statements relating to the infliction or threat of physical injury and was enacted to admit statements made to law enforcement officers in domestic violence cases, even though the statements could otherwise be excluded as inadmissible hearsay. *People v Meissner*, 294 Mich App 438, 445; 812 NW2d 37 (2011). MCL 768.27c provides, in relevant part, as follows:

(1) Evidence of a statement by a declarant is admissible if all of the following apply:

(a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

(b) The action in which the evidence is offered under this section is an offense involving domestic violence.

(c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer.

The statute also provides definitions of a "declarant" and "domestic violence." MCL 768.27c(5)(a)-(b). It sets forth some examples of "circumstances relevant to the issue of trustworthiness," such as whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested; whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive; and whether the statement is corroborated by other evidence. MCL 768.27c(2).

The evidence admitted pursuant to MCL 768.27c(1) consisted of the testimony of Officers Maynard and Seckler regarding statements made by the victim after each of the incidents of domestic violence. There can be no dispute that the victim was a "declarant," a person who makes a statement. MCL 768.27c(5)(a). The victim's statements were properly admitted under MCL 768.27c(1). The statements complied with the statute because: (a) they were admitted to narrate, describe, or explain the threat of physical injury to the victim; (b) they were admitted at defendant's trial in which he was accused of domestic assault of the victim, MCL 750.81(5); (c) they were made shortly after the assaults occurred; (d) they were made under circumstances indicative of the statements' trustworthiness because there was no evidence of pending or anticipating litigation in which the victim was interested, the defendant had just left the scene of the assaults, the statements were corroborated by the physical evidence, and there was no evidence of bias or motive; and (e) they were made to a law enforcement officer. See MCL 769.27c(1)-(2). The trial court properly admitted the evidence under MCL 768.27c(1).

Additionally, the admission of the officers' testimony regarding the victim's statements did not violate his right of confrontation. "Statements made to police officers by the victims of domestic violence that are admissible under MCL 768.27c(1) might still be barred under the Confrontation Clause if they are 'testimonial' in nature." *Nunley*, 491 Mich at 697-698, citing *Crawford*, 541 US at 51. However, these statements were nontestimonial because they were made in the course of a police investigation where the primary purpose was to assist in the presentation of an ongoing emergency. *Davis*, 547 US at 822. In this case, when the officers responded to the victim's apartment, all they knew was that an assault had occurred. When the officers questioned the victim shortly after the assaults occurred, she said that defendant had physically assaulted her and had left. The officers elicited the victim's statements to resolve a present emergency, not to learn about what had happened in the past. Accordingly, no Confrontation Clause violation occurred.[7]

---

[7] Defendant also argues that he was entitled to a mistrial when Officer Seckler twice made unresponsive comments in response to prosecutorial questioning that suggested that defendant assaulted the victim on multiple occasions. Unresponsive or volunteered testimony to a proper question is generally not grounds for a mistrial. *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009). Any error may generally be cured by a timely motion to strike the testimony and request for a cautionary instruction. *People v Barker*, 161 Mich App 296, 306-307; 409 NW2d 813 (1987). In response to defense counsel's objection and motion to strike the testimony, the trial court granted the request to give the jury a cautionary, limiting instruction. To the extent that the

## V. SCORING GUIDELINES

Finally, defendant submits that he was denied of the right to be sentenced premised on accurate information when Offense Variable (OV) 13 was improperly scored 25 points. We disagree.

When reviewing a challenge to the scoring of the sentencing guidelines, this Court reviews the trial court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

A trial court properly scores OV 13 if there was a "continuing pattern of criminal behavior." MCL 777.43. Specifically, the trial court is instructed to score OV 13 at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The statute then further provides that "[f]or determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). If no pattern of felonious criminal activity existed, the trial court must score OV 13 at zero points. MCL 777.43(1)(g). The Code of Criminal Procedure defines a "felony" as "a violation of a penal law of this state for which the offender . . . may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(f).

Here, Officer Maynard testified that he was dispatched to the victim's apartment on July 21, 2017, in reference to a home invasion and assault. When he arrived, the victim was visibly upset and crying and had sustained an injury to her mouth. The victim said that defendant had entered her apartment through an unlocked window and that he assaulted her by punching her several times in the face with a closed fist. Photographs of the victim's injuries were admitted at trial. The sentencing information report documents that felony charges, including second-degree home invasion and domestic violence–third offense,[8] were filed against defendant. The charges were later dismissed because the victim "did not want to pursue." Officer Kevin Seckler testified about another domestic assault that occurred against the victim on December 10, 2017, when

comments elicited by the prosecution could be construed as arguably improper, any perceived prejudice was cured by obtaining the appropriate cautionary instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2011). The court's instruction was sufficient to dispel any possible prejudice. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). For the same reasons, defendant has failed to show plain error as a result of the trial court's failure to declare a mistrial.

[8] The domestic assaults committed against the victim in 2017 were felonious in nature because defendant had twice been convicted of domestic violence—once in November 2015 and again in February 2016. See MCL 750.81(5).

-15-

defendant punched and bit her and threw her onto a table and started to choke her. Officer Seckler observed bit marks on the victim, and photographs of the injuries were admitted into evidence at trial. Defendant was charged with assault with intent to do great bodily harm less than murder and domestic violence–third offense, both felonies. Those charges were later dismissed. A preponderance of the evidence clearly supports the court's finding that, within a five-year period that encompasses the sentencing offense, defendant committed three or more offenses against a person, including the sentencing offense. Accordingly, OV 13 was properly scored at 25 points.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle