**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 24, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                        No. 127303

NINA JILLAINE SHEPHERD a/k/a
NINA JILLAINE BUTTERS,

    Defendant-Appellee.

_____

**PER CURIAM.**

At issue is whether the alleged constitutional error of admitting in evidence a transcript of an unavailable witness's testimony in a different case was harmless. We conclude that it was harmless because other evidence was sufficient to sustain defendant's conviction. Accordingly, we reverse the judgment of the Court of Appeals and remand the matter to the trial court for the reinstatement of the conviction and the sentence.

## I. BACKGROUND

In the early morning hours of June 2, 2003, defendant and her boyfriend, Bobby Butters, were departing from a

Midland County bar owned by Rose York. Defendant was a former employee of the bar and Butters was a frequent customer. York testified that she observed defendant and Butters in the parking lot after closing and overheard them discussing rides. She saw defendant get in defendant's station wagon and she observed Butters drive off in his pickup truck.

Unbeknownst to defendant or Butters, the pickup truck was under surveillance by a Midland County sheriff's deputy, Sergeant Stephen Woods. Woods testified that he saw someone who appeared to match the general physical description of Butters get into the truck after speaking to a woman in the parking lot. Another sheriff's deputy then attempted to initiate a traffic stop, but Butters accelerated the truck to one hundred miles an hour, did not stop at a stop sign, and attempted to collide with a patrol car. He escaped, but was later apprehended.

Butters was charged with third-degree fleeing and eluding the police, MCL 750.479a(3); two counts of felonious assault, MCL 750.82; malicious destruction of fire or police property, MCL 750.377b; operating a vehicle while having a suspended or revoked license, MCL 257.904(3)(b); and driving a vehicle with an invalid or missing license plate, MCL 257.255(1). As part of the

alibi defense that Butters advanced, defendant testified that Butters had departed the parking lot with her, in her station wagon, on the morning of the crime, and that, consequently, he could not have been the person in the truck who fled from the police. Butters was nevertheless convicted of third-degree fleeing and eluding and one count of felonious assault.[1] He was then charged with subornation of perjury, MCL 750.424, to which he pleaded guilty.[2] At his plea hearing, Butters testified that defendant's testimony at his trial for fleeing and eluding was false information and that he had requested defendant to provide that testimony. Defendant was charged with perjury for giving the allegedly false testimony.

## II. PROCEDURAL HISTORY

At defendant's trial, the court admitted the transcript of the hearing at which Butters pleaded guilty of subornation of perjury. Also admitted were certain

---

[1] The jury acquitted Butters of malicious destruction of fire or police property, and was unable to reach a verdict on the remaining count of felonious assault. The trial court dismissed that felonious assault charge and the licensing charges. The Court of Appeals affirmed. *People v Butters*, unpublished opinion per curiam of the Court of Appeals, issued July 22, 2003 (Docket No. 239277).

[2] By order of April 3, 2003 (Docket No. 246539), the Court of Appeals denied Butters's application for leave to appeal that conviction for lack of merit.

statements that Butters was overheard making while he was in jail, a "script" of questions and answers that Butters had created for defendant in preparation for her testimony in his fleeing and eluding trial, and the testimony of witnesses who were present on the morning of the fleeing and eluding offense. Defendant's defense was that she was telling the truth when she testified in the earlier trial. The trial court denied defendant's motion for a directed verdict, and the jury found defendant guilty of perjury.

Defendant appealed, and the Court of Appeals majority reversed her conviction pursuant to *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).[3] The Court found constitutional error in the admission of the plea transcript, and the majority held that "[i]t is not at all clear that a rational jury would have found defendant guilty beyond a reasonable doubt absent the improperly admitted statement." 263 Mich App at 672-673. The Court of Appeals dissenting judge concluded that the error was harmless on the basis of the other evidence in support of the verdict.

The prosecutor seeks leave to appeal, conceding that the plea transcript was improperly admitted, but arguing

---

[3] **263 Mich App 665; 689 NW2d 721 (2004).**

4

that the error was harmless beyond a reasonable doubt in light of the other legally admissible evidence that established defendant's guilt.

### III. STANDARD OF REVIEW

"A constitutional error is harmless if '[it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *People v Mass,* 464 Mich 615, 640 n 29; 628 NW2d 540 (2001), quoting *Neder v United States,* 527 US 1, 19; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

### IV. ANALYSIS

In *Crawford, supra*, the United States Supreme Court held that, under the Confrontation Clause of the Sixth Amendment, testimonial statements of witnesses absent from trial may not be admitted against a criminal defendant unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. The Court of Appeals held that the trial court's admission of the transcript, in which Butters pleaded guilty of the crime of subornation of perjury, violated defendant's right to confront the witnesses against her. The Court correctly concluded that the alleged error was not a structural defect requiring automatic reversal. The question presented is whether the alleged constitutional error was

5

harmless beyond a reasonable doubt. We agree with the dissenting Court of Appeals judge that it was.[4]

Harmless error analysis applies to claims concerning Confrontation Clause errors, see *Delaware v Van Arsdall*, 475 US 673, 684; 106 S Ct 1431; 89 L Ed 2d 674 (1986). But to safeguard the jury trial guarantee, a reviewing court must "conduct a thorough examination of the record" in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error. *Neder, supra* at 19.[5] Having conducted such a review, we conclude beyond a reasonable doubt that a reasonable jury would have found defendant guilty of perjury even if the transcript of Butters's guilty plea to the charge of subornation of perjury had not been admitted.

At Butters's trial for fleeing and eluding, defendant testified that, on the morning in question, she had asked Butters to ride with her and that Butters gave his truck

---

[4] Because we conclude that the admission of the guilty plea transcript was harmless, it is not necessary to address whether the admission of the transcript violated the Confrontation Clause of the United States Constitution, US Const, Am VI, and "it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Constr Co v Bricklayers & Allied Craftsmen, Local 1,* 468 Mich 722, 734; 664 NW2d 728 (2003).

[5] This Court adopted the *Neder* harmless error standard in *Mass, supra* at 640 n 29.

keys to Tony Miller.  She testified that Butters requested that she take him to his grandmother's house to pick up some beer, that he told others that he was riding with her, and that Butters left the bar in defendant's car.

The statutory definition of perjury provides, in part:

> Any person authorized by any statute of this state to take an oath, or any person of whom an oath shall be required by law, who shall wilfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized or required, shall be guilty of perjury . . . . [MCL 750.423.]

Apart from the plea transcript, the prosecution offered at least four other pieces of evidence that strongly supported a guilty verdict for perjury by establishing that defendant's testimony in the fleeing and eluding case was false.[6]

First, Rose York testified that she was standing outside in the parking lot when the patrons were leaving the bar.  She observed defendant and Butters leave the bar together, heard them discussing rides, and saw them split up and go to their separate vehicles.  She saw defendant get into her car and Butters get into his truck.  Sheriff's Deputy Woods corroborated York's testimony.  He testified

---

[6] We recognize that the prosecutor emphasized the erroneously admitted guilty plea transcript in his argument, but this does not alter our analysis.

that he had knowledge of Butters's physical appearance from prior contacts with him, and that he saw a person who generally matched that description talking with a woman and then getting in the vehicle that was being surveilled.

Second, Tony Miller testified that he was very intoxicated on the morning in question and needed to be driven home from the bar by Ty Maltby. Miller stated that he was never in Butters's pickup truck, but that defendant later telephoned him to ask him to tell the police that he had been driving it. Maltby, who testified that he had not been drinking during the time in question, corroborated Miller's testimony that Maltby drove Miller home. Thus, Miller could not have been driving Butters's pickup truck at the time of the fleeing and eluding offense.

Third, the prosecution also introduced the "script" that Butters had prepared for defendant and that had been introduced at the fleeing and eluding trial to impeach defendant's testimony. The trial court properly admitted it. The script contained twenty-one questions and answers, detailing the testimony that defendant would give at the earlier trial. It included the following:

> 3) Did you see keys in Butters [sic] hand? Yes[.]
>
> 4) What did he do with the keys? Gave them to his cousin Tony Miller[.]

5) When did he give his keys to Miller? <u>On the way out of the Bar.</u>

6) Why did Butters give his keys to Miller? <u>Bob & I were going to his house to get beer from his refrigerator & then we were going to Tony's house. Tony needed a ride so Bob told Tony to take his truck.</u>

7) How did you leave the bar? <u>My car[.]</u>

8) Who was with you? <u>Bob Butters[.]</u>

Finally, two corrections officers testified that, after Butters was arrested and incarcerated in the Midland County Jail, they overheard him talking to two visitors.[7] Butters told the visitors: that there was no way he would have stopped for the sheriff's deputies because he had so much cocaine in the truck that he would have been put away for life; that he would have "killed one of the cops" before allowing himself to be caught; and that there was no way defendant would be charged with perjury because they were just trying to scare her.

Therefore, on the basis of this overwhelming evidence of the falsity of defendant's testimony in the fleeing and eluding trial, we conclude that it is clear beyond a reasonable doubt that a reasonable jury would have found defendant guilty of perjury even if the transcript of

---

[7] The Court of Appeals correctly found that the corrections officers' testimony about Butters's nontestimonial statements to his visitors was properly admitted under MRE 804(b)(3).

9

Butters's plea to the charge of subornation of perjury had not been admitted.  Thus, the trial court's alleged error in admitting the transcript was harmless beyond a reasonable doubt.  The judgment of the Court of Appeals is reversed, and this case is remanded to the Midland Circuit Court for the reinstatement of the conviction and the sentence.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                    No. 127303

NINA JILLAINE SHEPHERD a/k/a
NINA JILLAINE BUTTERS,

    Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I agree with the result and most of the reasoning of the majority opinion. I write separately because the general principle that "'questions of constitutionality should not be decided if the case may be disposed of on other grounds,'" *ante,* p 6 n 4 (citation omitted), does not necessarily apply in criminal cases. As I stated in my partial concurrence and partial dissent in *People v McNally,* 470 Mich 1, 10-11; 679 NW2d 301 (2004),

> . . . that general principle does not apply here [in a criminal case]. The phrase used by the majority is a convenient and often-used shorthand for the principle that "considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress [or the Legislature] unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it." *Ashwander v Tennessee*

*Valley Auth,* 297 US 288, 341; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J., concurring).

One of the earliest applications of this rule in Michigan was in 1874, when this Court said "any consideration of the constitutional question might have been waived, upon the ground that a legislative act should not be declared unconstitutional unless the point is presented in such a form as to render its decision imperative . . . ." *Weimer v Bunbury,* 30 Mich 201, 218 (1874).

The reasons behind such judicial restraint include the delicacy and finality of judicial review of legislative acts, separation of powers concerns raised by ruling on the acts of the other two branches of government, and the need to show respect for the other two branches of government. See *Rescue Army v Muni Court of Los Angeles,* 331 US 549, 571; 67 S Ct 1409; 91 L Ed 1666 (1947), and Kloppenberg, *Avoiding serious constitutional doubts: The supreme court's construction of statutes raising free speech concerns,* 30 UC Davis L R 1, 13-14 (Fall, 1996).

These concerns are not implicated here, because the constitutionality of an act of the Legislature or the Governor is not at issue. In deciding whether the defendant's postarrest, pre-Miranda silence was admissible in the prosecutor's case-in-chief, the Court would not be ruling on the validity of a legislative or executive decree, but on a lower court's decision whether to admit certain testimony. See Kloppenberg, *Avoiding constitutional questions,* 35 B C L R 1003, 1054 (1994).

But I agree that in *this* case it is not necessary to address the constitutional issue when the Court has concluded that the admission of the evidence was harmless.

Elizabeth A. Weaver

2

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                 No. 127303

NINA JILLAINE SHEPHERD a/k/a
NINA JILLAINE BUTTERS,

    Defendant-Appellee.

---

CAVANAGH, J. (*dissenting*).

I dissent on the grounds that such an important, and recurring, issue should not be decided by opinion per curiam. I would either hold this case in abeyance for this Court's decision in *People v Jackson*, Docket No. 125250, or grant leave to appeal.

                                  Michael F. Cavanagh
                                  Marilyn Kelly