# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DENZEL BERRY,

       Defendant-Appellant.

UNPUBLISHED
May 12, 2015

No.   320793
Genesee Circuit Court
LC No.   13-033880-FC

Before:  RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c) (vaginal and oral penetration with force or coercion during commission of another felony), first-degree home invasion, MCL 750.110a(2), unarmed robbery, MCL 750.530, assault with intent to do great bodily harm, MCL 750.84, and assault with intent to commit criminal sexual penetration, MCL 750.520g(1).  Defendant was sentenced to 23 to 50 years' imprisonment for the CSC convictions, 10 to 20 years' imprisonment for home invasion, 8 to 15 years' imprisonment for unarmed robbery, 5 to 10 years' imprisonment for assault with intent to do great bodily harm, and 4 to 10 years' imprisonment for assault with intent to commit criminal sexual penetration.  We affirm.

On appeal, defendant argues that he was denied his constitutional right of confrontation and a fair trial because of the admission of hearsay evidence that confirmed that the Combined DNA Indexing System (CODIS) database matched his DNA with DNA taken from the victim. We disagree.

The underlying facts of this case involve the rape of an elderly woman.  After the crime occurred, the police were contacted and the victim was transported to the hospital.  A rape kit was performed, which included obtaining oral, anal, and vaginal swabs from the victim.  The kit was eventually delivered to the Lansing state police crime lab for processing.  Defendant's claim of error arises from use of the DNA obtained from the rape kit to identify defendant through the CODIS database.

Nicole Graham, a forensic scientist at the Lansing state police lab and CODIS administrator, testified at trial.  Graham explained that CODIS is a nationwide pool of DNA profiles. When Graham receives a sample from a case, such as the one obtained in this case from the rape kit, an evidence profile is created for the sample (a casework sample), and searched

against the pool of already existing evidence profiles, which come primarily from convicted offenders and arrestees. Graham handled all of the CODIS "hits" for the Lansing lab; a hit means that two profiles are found to match each other. Graham testified that each time a match was made in CODIS, she would be notified by the computer that a certain casework sample matched an offender's profile. CODIS samples are searched every Monday, and Graham receives a list of matches. Graham then contacts the CODIS unit[1] to confirm the match. The CODIS unit would pull the DNA sample that was originally identified, enter it again into CODIS, and rerun it to make sure they got the same result.

On April 4, 2013, Graham received notification that the vaginal swab sample she submitted for the victim got a "hit" for defendant, whose DNA sample was already in the CODIS database. She then contacted the CODIS unit to confirm the match, and received notification formally from the unit providing defendant's identifying information. Graham passed this information on to Dave VanSingel, the officer in charge of defendant's case. Graham requested a new, known sample from defendant for confirmation. She ran this sample against the casework sample and obtained a match.

On appeal, defendant argues that the person who confirmed the initial CODIS hit was required to testify. According to defendant, the prosecution's failure to have that individual testify violated his rights under the Confrontation Clause.

Generally, we review de novo questions of constitutional error. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). However, defendant did not raise this issue in the trial court. We review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Payne*, 285 Mich App 181, 199; 774 NW2d 714 (2009), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "In order to avoid forfeiture under the plain-error rule, it must be shown that the plain error affected the outcome of lower court proceedings." *Payne*, 285 Mich App at 199. "And even then, we will generally reverse only if the defendant is actually innocent or the error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. In addition, "[a] constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005) (internal quotation marks and citation omitted). "Harmless error analysis applies to claims concerning Confrontation Clause errors[.]" *Id*. at 348.

The Confrontation Clause, US Const, Am VI, grants defendant the right "to be confronted with the witnesses against him." "The Confrontation Clause prohibits the admission of out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Defendant primarily relies on *Melendez-Diaz v Massachusetts*, 557 US 305, 310-311; 129 S Ct 2527; 174 L Ed 314 (2009), where the United States Supreme Court held that forensic analysts' certificates prepared in connection with a criminal investigation were

---

[1] Graham explained that the CODIS unit processed samples from convicted offenders and arrestees and entered the samples into the database.

testimonial and thus the prosecution needed to offer the analysts' live testimony at trial, unless they were unavailable and defendant had a prior opportunity to cross-examine them.

After a review of the record, we conclude that any error relating to the necessity of testimony regarding the confirmation of the initial CODIS hit does not warrant reversal. Primarily, any error was harmless. *Shepherd*, 472 Mich at 348. Graham testified that she received an initial CODIS hit based on defendant's already existing profile in the CODIS database. This match was confirmed by the CODIS unit, and the lack of testimony from the individual who confirmed the match is the basis of defendant's claim. However, after receiving confirmation, Graham requested and received an independent DNA sample for defendant from VanSingel, and used that sample to match the casework sample she had received from the rape kit. Therefore, even assuming the Confrontation Clause required the individual who confirmed the initial CODIS hit to testify, it was undoubtedly harmless given the independent search that was subsequently performed and the results Graham properly testified to at trial. In addition, we are not convinced that the evidence referenced by defendant constitutes hearsay evidence. "[T]he Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Chambers*, 277 Mich App at 10-11. A statement offered to show the effect it has on the person listening does not violate the Confrontation Clause. *Id*. at 11. Here, Graham's testimony that she received confirmation of the initial CODIS hit was offered in order to show her next steps—that she received another DNA sample directly from defendant to test against the casework sample. A statement offered to show the effect on the person listening does not violate the Confrontation Clause. *Id*. Accordingly, reversal is not warranted. Further, given the fact that defendant's claimed error was clearly not outcome determinative and the fact that the statement was not hearsay, we conclude that it would be inappropriate to determine whether evidence of CODIS searches and the results received constitute testimonial evidence.

Defendant asserts that the evidence regarding confirmation of the initial CODIS hit was not harmless error because there was a break in the chain of custody for the DNA sample taken directly from defendant and provided to Graham. We disagree. Detective VanSingel obtained a DNA sample from defendant. VanSingel placed the sample in a box, and put the box in a locked drawer in his desk. The sample stayed in VanSingel's desk drawer from October 30, 2012, until November 28, 2012, when VanSingel gave it to evidence technician Sheri Estep. VanSingel testified that he was not aware that anyone else had a key to his desk drawer but was not sure. After receiving the request from Graham for defendant's DNA sample, the sample was transported to the Michigan state police lab.

Defendant asserts that because VanSingel cannot say that he had exclusive access to his locked desk drawer, there was an effective break in custody. Defendant also argues that the box containing the DNA sample was not taped or sealed, further discrediting the sample. According to defendant, the break in the chain of custody is sufficient to show that the alleged Confrontation Clause error was not harmless. However, we do not agree that the record evidence reveals a problem with the chain of custody. Although the box containing defendant's DNA sample was not sealed, the testimony showed that the sample was stored in a self-sealing capsule within the box. Further, while VanSingel could not say for certain whether someone else had a key to his drawer, he testified that he did not know of anyone who had a key and that the box remained in his drawer the entire time. There was also no evidence to suggest that the DNA

sample or box was moved or tampered with. In addition, it is well-established that deficiencies in the chain of custody go to the weight, not the admissibility, of the evidence. *People v White*, 208 Mich App 126, 133; 527 NW2d 34 (1994). Here, defense counsel cross-examined VanSingel and emphasized to the jury the alleged issues with VanSingel's handling of the evidence. Thus, the jury had the opportunity to evaluate any deficiencies. For these reasons, we do not agree that the alleged break in custody of defendant's DNA sample created outcome determinative error.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood