*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA DAYSHAUN FLY,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2024
11:14 AM

No. 366600
Ingham Circuit Court
LC No. 21-000268-FH

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Defendant, Joshua Dayshaun Fly, appeals as of right his convictions of child sexually abusive activity (CSAA) in violation of MCL 750.145c(2), possession of child sexually abusive material (CSAM) in violation of MCL 750.145c(4)(a), and using a computer to commit a crime in violation of MCL 752.796, following a jury trial. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On December 1, 2020, defendant visited the home of his friend, Damien Williams, in Lansing. Defendant was called into a bedroom by Mr. Williams. When defendant arrived in the bedroom, there were about four or five people in the room. Mr. Williams was in a bed having sex with a girl. Mr. Williams told defendant to "record her," so defendant took out his cell phone and started recording a video of Mr. Williams having sex with the girl.

On December 3, 2020, Lansing Police officers executed a search warrant at 1247 Allen Street, a house where defendant had been staying. The police recovered defendant's cell phone and obtained a search warrant for the contents of the phone. The Lansing Police gave defendant's phone to the Michigan State Police Computer Crimes Unit for forensic extraction of the data. The forensic data report revealed the video from December 1, 2020.

Detective Martha McGonegal of the Lansing police reviewed the video and was able to identify the man having sex as Damien Williams because she had previously interviewed Williams about three or four times. According to Detective McGonegal, the video depicts a girl in a floral bonnet sitting on a bed, and as she stands up, it is clear that Williams and another girl are in the

bed having sex. Detective McGonegal recognized the voice of the man narrating the video as defendant because she had interviewed him before and thought he had a distinct voice. Detective McGonegal took screenshots of the two girls' faces in the video and sent them to Child Protective Services (CPS) in an attempt to identify the girls. CPS was able to identify the girl in the bonnet as 13-year-old KE, and the girl having sex with Williams as 16-year-old AF. Defendant was 21 years old at the time the video was made, and Williams was 20 years old.

At trial, the prosecution called Williams to testify against defendant. Williams was incarcerated after pleading guilty to CSAA in connection with his role in making the video. Williams pleaded guilty in exchange for a sentencing agreement and dismissal of three other charges, including first-degree criminal sexual conduct. Williams did not agree to testify against defendant as part of his plea, but the prosecution subpoenaed him to testify at defendant's trial. When the prosecutor called Williams as a witness, he pleaded the Fifth and refused to testify. The trial court held Williams in contempt of court and sentenced him to serve 93 days in jail.

The prosecutor moved to have Williams declared as an unavailable witness for his refusal to testify under MRE 804(a)(2), such that his plea hearing transcript could be admitted as a statement against interest under MRE 804(b)(3)[1]. The prosecutor argued that because Williams pleaded guilty to CSAA under a theory in which an element included the production of child sexually abusive material, implicating the person who recorded the video was necessary to establish a factual basis for his guilty plea. Defense counsel argued that the statement actually identifying defendant as the person who made the video was not against Williams' interest. The trial court found that Williams' statement was against his interest because he was pleading guilty, i.e., subjecting himself to criminal liability, to an offense that required another person's participation as well as his own ("did persuade… or knowingly allow a 16 year old child to engage in child sexually abusive activity for the purpose of producing any child sexually abusive material contrary to MCL 750.145c(2)(a)"). The trial court also concluded the testimony had a high indicia of reliability because Williams was under oath, and he was not implicating defendant in exchange for sentencing leniency. Thus, the trial court did not find any violation of the Confrontation Clause in admitting the transcript. The trial court permitted the prosecution to read a redacted version of Williams' plea hearing transcript into the record at defendant's trial.

The part of the plea hearing transcript where Williams implicates defendant as part of the factual basis states as follows:

> [*Defense counsel*]: And there was a second individual by the name of Joshua Fly who was also recording with his own cell phone; is that correct?
>
> *Mr. Williams*: That is correct.
>
> [*Defense counsel*]: And you allowed them to continue recording you while you continued to have sexual intercourse with that individual. So you knowingly

---

[1] Now MRE 804(b)(4) effective January 1, 2024.

allowed them to record you and film you and produce that child sexually abusive material; correct?

*Mr. Williams*: Yes, I did.

The jury found defendant guilty on all three counts. The trial court calculated the minimum sentence guideline range for counts one and three in this case, CSAA and use of a computer to commit a crime, to be 99 months to 160 months (8.25 to 13.3 years). The minimum sentence range for count two, possession of CSAM, was calculated to be 14 months to 29 months. The trial court sentenced defendant to serve 160 to 240 months (13.3 to 20 years) imprisonment for count one, 24 to 48 months imprisonment for count two, and 160 to 240 months imprisonment for count three, to be served concurrent with each other. Defendant now appeals.

## II. SIXTH AMENDMENT VIOLATION

Defendant argues that the trial court erred in admitting a redacted version of Williams' plea hearing transcript such that the trial court violated MRE 106, and defendant was denied his Sixth Amendment right to a fair trial. Defendant further asserts that the jury should have been made aware of the redacted portions of the transcript that indicated Williams pleaded guilty in exchange for the dismissal of the charge of first-degree CSC. We agree the trial court erred in admitting the transcript, but disagree that the trial court's error deprived defendant of a fair trial.

## A. STANDARD OF REVIEW

"When an issue is not properly preserved for appellate review, this Court reviews the unpreserved issue for plain error affecting a defendant's substantial rights." *People v Francis*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 364998); slip opn at 3, citing *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999). "This Court reviews de novo both constitutional claims and preliminary questions of law regarding admissibility of evidence." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). But the trial court's ultimate decision regarding the admissibility of evidence is reviewed for an abuse of discretion. *Id*. "An abuse of discretion occurs when [the] trial court's decision is outside the range of principled outcomes." *Id*. And "[h]armless error analysis applies to claims concerning Confrontation Clause errors." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). "A constitutional error is harmless if '[it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id*. at 347, quoting *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001).

## B. ANALYSIS

Defendant did not object to the admission of the transcript on grounds that the complete writing should be admitted pursuant to MRE 106. Therefore, our review of this unpreserved issue is for plain error affecting defendant's substantial rights. The trial court did not violate MRE 106 when admitting the redacted transcript because MRE 106 would only be violated "if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Defense counsel did not

object to the redacted version of the transcript, nor attempt to introduce the unredacted version, on the basis of MRE 106. Accordingly, there was no error affecting defendant's substantial rights.

The plea transcript read at defendant's trial redacted any instance mentioning that Williams was appearing from the Department of Corrections or was currently serving a sentence. Any mention that Williams was pleading guilty in exchange for a sentencing agreement and dismissal of three other charges was also redacted. Further, the transcript redacted the statutory maximum penalty and Sex Offender Registry requirements that would apply if Williams pleaded guilty. Also, various portions discussing administrative matters such as the date of sentencing were redacted. It is clear from this record that Williams' sentencing agreement did not confer any benefit to him in exchange for testifying against defendant. Testifying against defendant was not mentioned at all during Williams' plea taking, and it clearly was not a term of his plea agreement as defendant contends. Redacting the plea agreement in no way omitted a suggestion to defendant's jury that Williams' plea was premised on implicating defendant, and should therefore be given reduced weight by defendant's jury, because that was not a condition of Williams' guilty plea.

While defendant is correct that the redacted version of the plea transcript read to the jury omitted Williams' sentencing agreement, it did not render defendant's trial unfair. It is clear that the prosecution redacted the terms of the plea agreement for reasons other than trying to mislead the jury, as defendant argues. "[S]entencing is 'a matter for the exercise of judicial discretion [which] requires an individualized factual basis' of the defendant's personal, criminal, and mental history, as well as the circumstances of the crime." *People v Beck*, 504 Mich 605, 658; 939 NW2d 213 (2019) (Clement, J., dissenting), quoting *People v Lee*, 391 Mich 618, 639; 218 NW2d 655 (1974). Because defendant and Williams were both charged with CSAA, it was reasonable for the trial court to assume that Williams' possible sentence for CSAA might influence defendant's jury. Therefore, it was reasonable to omit any mention of Williams' possible sentence so as not to influence the jury in defendant's trial.

Williams pleaded guilty to child sexually abusive activity (CSAA) in violation of MCL 750.145c(2)(a), under the theory that he "did persuade, induce, entice, coerce, cause, or knowingly allow a 16 year old child to engage in child sexually abusive activity for the purpose of producing any child sexually abusive material." Because it was clear from the video that Williams was having sex with AF, he could not also be the person recording the video. Thus, Williams had to implicate another person to satisfy the element of producing CSAM in accordance with the statute. When establishing the factual basis, Williams' attorney asked, "And there was a second individual by the name of Joshua Fly who was also recording with his own cell phone; is that correct?" Williams answered, "That is correct." From this record, it is apparent that Williams implicated defendant to establish the factual basis for his guilty plea, rather than for receiving leniency pursuant to a plea agreement.

While defendant has characterized his claim as one implicating his Sixth Amendment right to a fair trial, his claim is more appropriately analyzed under the Sixth Amendment's Confrontation Clause. "In *Crawford*, *supra*, the United States Supreme Court held that, under the Confrontation Clause of the Sixth Amendment, testimonial statements of witnesses absent from trial may not be admitted against a criminal defendant unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant." *Shepherd*, 472 Mich at 347. Here, the

trial court concluded that Williams was an unavailable witness because he refused to testify even though his Fifth Amendment rights had expired upon pleading guilty, and he had been subpoenaed by the prosecutor. The trial court explained to Williams that he no longer had a Fifth Amendment right not to testify because he had pleaded guilty and had already testified to the subject matter during his guilty plea hearing. Williams still refused to testify because he was "not comfortable speaking on this situation as it may lead to further harm to [himself]."

The trial court found that, when Williams made the statement implicating defendant as the one who recorded the video, the statement was contrary to Williams' interest because it subjected him to criminal liability, as well as defendant, and thus fit the hearsay exception in MRE 804(b)(3). However, the Confrontation Clause requires that testimonial statements are to be used against a criminal defendant only if the defendant has had a prior opportunity to cross-examine the declarant. *Shepherd*, 472 Mich at 347. Williams' statement is testimonial because it was made under "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Fackelman*, 489 Mich at 556. Williams was in court, testifying under oath to establish a factual basis for his guilty plea. Also, defendant did not have a prior opportunity to cross-examine Williams regarding his statement inculpating defendant. The trial court did not analyze this requirement, and it is clear that defendant did not have a prior opportunity to cross-examine Williams regarding his statement. Therefore, the trial court erred in admitting the transcript in violation of the Confrontation Clause.

Because the trial court erred in admitting the plea hearing transcript, we "must 'conduct a thorough examination of the record' in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *Shepherd*, 472 Mich at 348 (citation omitted). At trial, the prosecution presented evidence that the video constituting CSAM was found on defendant's phone. Detective McGonegal testified that she recognized Williams in the video and defendant's voice narrating the video. Furthermore, AF identified defendant as the person who recorded the video. But the strongest evidence against defendant was his own testimony in which he admitted to taking the video of Williams having sex with underage AF. He admitted he did not ask her age, in violation of the CSAA statute requiring a reasonable inquiry into a person's age before having sex. After a review of the sum of the evidence, it is clear beyond a reasonable doubt that the jury verdict would have been the same absent the trial court's error. Therefore, the error was harmless and defendant is not entitled to a new trial.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his counsel was ineffective for failing to object to the admission of the redacted transcript for Williams' plea hearing on the ground that it eliminated all of the benefits Williams received by pleading guilty. We disagree.

## A. STANDARD OF REVIEW

To preserve the issue of whether counsel rendered ineffective assistance, the defendant must move for a new trial or evidentiary hearing in the trial court. *People v* Sabin, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant has not moved for a new trial or evidentiary hearing in the trial court. The issue of ineffective assistance of counsel is therefore unpreserved and our review is limited to mistakes apparent on the record. See *id*.

-5-

## B. ANALYSIS

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Urbanski*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 359011), slip op at 2 (citation omitted). There is a strong presumption that counsel's performance was born from sound trial strategy, and this Court will not second-guess counsel on matters of trial strategy. *Id*.

As discussed above, defense counsel did object to the admission of Williams' plea hearing transcript on grounds that it did not meet the hearsay exception for statements against interest under MRE 804(b)(3). Defense counsel did not object to the transcript as a testimonial statement in violation of the Sixth Amendment's Confrontation Clause. However, this alone does not render counsel's performance ineffective. Defense counsel objected to the transcript on other grounds and made other sound objections to testimony and evidence during the trial. Accordingly, defense counsel was not ineffective.

Additionally, assuming arguendo that counsel was ineffective for failing to object on Confrontation Clause grounds, this did not prejudice defendant. If counsel had successfully raised an objection and the trial court excluded Williams' plea transcript because of the Confrontation Clause violation, there is not a reasonable probability that the outcome of the trial would have been different. See *Urbanski*, __ Mich App at __; slip op at 2. As outlined above, the jury heard overwhelming evidence of defendant's guilt, including the victim AF identifying defendant as the person who recorded the video, and defendant himself admitting he recorded the video at Williams' request. Therefore, defendant has not shown he was prejudiced by counsel's error.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecution did not provide sufficient evidence to prove defendant knew or reasonably should have known that AF was less than 18 years old in violation of MCL 750.145c(2)(a) (CSAA).

## A. STANDARD OF REVIEW

"This Court reviews de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010).

## B. ANALYSIS

MCL 750.145c(2)(a) requires that if "the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime …." Thus, defendant must have taken reasonable precautions to determine the age of AF to

avoid criminal responsibility. Detective McGonegal testified that she sent the girls' photos to CPS in an attempt to identify them because they looked young. Defendant admitted he did not ask AF's age. The statute requires reasonable precautions be taken determine the person's age, and defendant did not take any precautions. Therefore, there was sufficient evidence to convict defendant of CSAA. This evidence, along with the evidence that established defendant recorded the video of Williams and AF having sex, was more than sufficient for the jury to find the prosecution presented evidence for each element of CSAA.

## V. SENTENCING

Defendant argues that his sentences for CSAA and UCCC of 160 months to twenty years' imprisonment are unreasonable and disproportionate. We disagree.

This Court reviews a within-guidelines sentence for reasonableness. *People v Posey*, 512 Mich 317, 326; 1 NW3d 101 (2023). The trial court's sentencing decisions are reviewed under an abuse of discretion standard. *Id*. at 325. Defendant was sentenced to serve a minimum term of 160 months imprisonment, which was the top end of defendant's minimum sentencing guidelines range. The sentencing judge expressed that the "severity of the offense" played a role in sentencing and that she could "hardly think of something more repulsive or horrid" than the video defendant recorded. On this record, it is clear the trial judge did not abuse her discretion in imposing a sentence of 160 months, 13.3 years, imprisonment. The Michigan Department of Corrections recommended a sentence of 112 months imprisonment in defendant's PSIR, which is four years less than defendant's actual sentence. The sentence imposed is proportionate to defendant's actions in this case. Defendant has not overcome the presumption that defendant's within-guidelines sentence is reasonable and proportionate.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica