*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERRARD ELIHU LOVE,

Defendant-Appellant.

UNPUBLISHED
January 13, 2025
3:10 PM

No. 365406
Wayne Circuit Court
LC No. 21-005341-01-FH

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and a second count of AWIGBH by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 25 years' imprisonment for both convictions. We affirm.

## I. FACTUAL BACKGROUND

In June 2021, defendant was dating the victim, Daijanae Jones. Jones was pregnant with defendant's child at the time. On June 6, 2021, defendant and Jones got into an argument about the paternity of Jones's child. The couple was at defendant's apartment at the time. Jones attempted to leave the apartment during the argument, but defendant prevented her from leaving by taking her shoes, wallet, cell phone, and keys. Defendant then made Jones walk out to Jones's vehicle arm-in-arm. Jones testified that she went with defendant because she was afraid of him. Defendant placed Jones in the driver's seat and ordered her to drive, but did not tell her where to go.

Jones was driving in the middle lane on I-94 when defendant grabbed the steering wheel and jerked it toward the median. Jones drove to the shoulder on the right side of the road and parked the vehicle. As soon as Jones parked, she jumped out of the vehicle and ran across the highway. Defendant chased after her and carried her back to the vehicle. As soon as defendant put Jones into the vehicle, she jumped out and ran across the freeway, again attempting to jump across the median into traffic, causing traffic to stop. When Jones did not make it over the median, she began knocking on car windows, begging for assistance and telling the other drivers that she

-1-

thought that defendant was going to kill her. A male witness and an unidentified woman pulled over separately to assist Jones while she waited for the police to arrive. In relation to the incident, defendant was subsequently charged with AWIGBH, MCL 750.84(1)(a); AWIGBH by strangulation or suffocation, MCL 750.84(1)(b); false imprisonment, MCL750.349b; felon in possession of a firearm, MCL 750.224f; and two counts of possession of a firearm at the time of commission of a felony, MCL 750.227b.

Relevant to this appeal, we note that Jones was a reluctant witness at trial. At one point, Jones asked to invoke the Fifth Amendment in order to avoid testifying. The court excused the jury and asked Jones if she understood that the Fifth Amendment only protected her from making a statement against herself. Jones indicated that she understood. The trial court informed Jones that the Fifth Amendment did not protect her from testifying if she was not going to incriminate herself. Jones indicated that she wanted to invoke her Fifth Amendment protection because she did not want to testify. Jones stated that she was very emotional and that testifying was causing her stress. The trial court ultimately ruled that she was unavailable pursuant to MRE 804. As a result, the prosecution read Jones's preliminary examination testimony into the record. However, after doing so, the prosecution recalled Jones to the stand, at which point she offered further testimony and was subjected to a thorough cross-examination.

After lengthy deliberations, the jury found defendant guilty of one count of AWIGBH and one count of AWIGBH by strangulation, but acquitted him of the additional charges. Defendant was sentenced as earlier described. This appeal followed.

## II. ANALYSIS

## A. WITNESS AVAILABILITY

Defendant challenges the trial court's determination that Jones was an unavailable witness and the admission of Jones's preliminary examination testimony. He argues that the trial court's rulings deprived him of his right to confront the witness. We agree that error occurred, but hold that the error was harmless.

This Court generally reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Alexander*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364063); slip op at 6. A court abuses its discretion when its decision falls "outside the range of principled outcomes." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). A trial court also abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). Questions of law, including those concerning constitutional or evidentiary issues, are reviewed de novo. *People v Butler*, 513 Mich 24, 29; 6 NW3d 54 (2024).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. This right to confrontation applies to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v Texas*, 380 US 400, 406; 86 S Ct 1065; 13 L Ed 2d 923 (1965). This right encompasses "an adequate opportunity to cross-examine adverse witnesses." *US v Owens*, 484 US 554, 557; 108 S Ct 838; 98 L Ed 2d 951 (1988). However, "[t]he Confrontation Clause guarantees only 'an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Id*. at 559, quoting *Kentucky v Stincer*, 482 US 730, 739; 107 S Ct 2658, 2664; 96 L Ed 2d 631 (1987). "When a declarant appears at trial for cross-examination, the Confrontation Clause does not place any constraints on the use of a prior testimonial statement, and . . . the Clause does not bar the admission of a prior testimonial statement so long as the declarant is present at trial to defend or explain it." *People v Sardy (On Remand)*, 318 Mich App 558, 563; 899 NW2d 107 (2017) (quotation marks and citation omitted).

MRE 804(a) provides, in relevant part, that a witness will be declared unavailable if the witness:

(1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

(2) refuses to testify about the subject matter despite a court order to so;

(3) testifies to not remembering the subject matter;

(4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; . . . .

"Former testimony is admissible at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). "While unavailability is a term of art under MRE 804(a), it also bears a close nexus to the ordinary meaning of the word." *People v Adams*, 233 Mich App 652, 657; 592 NW2d 794 (1999) (quotation marks and citation omitted).

The trial court found that Jones's attempted invocation of the Fifth Amendment, her refusal to testify, and her obvious emotional distress satisfied MRE 804. It therefore declared her an unavailable witness. However, there is no evidence that Jones was actually unavailable at trial. The trial court found that Jones was in emotional distress, but explicitly stated that it did not believe that her distress rose to the level of mental infirmity or mental illness under MRE 804. While mental infirmity or mental illness may justify declaring a witness unavailable under MRE 804(a)(4), "emotional distress" alone is not one of the criteria for a finding of unavailability.

More importantly, Jones did not ultimately refuse to testify. Jones was present for the first day of trial and returned for the following two days of trial. She was called to the stand on each of those days and eventually testified under direct and cross-examination. There were several times when Jones stated that she did not recall in response to a question, but upon further questioning, she answered most of the questions. A comparison of Jones's preliminary examination testimony and her testimony at trial reveals that her testimony remained largely consistent. Therefore, the trial court erred by finding that Jones was unavailable as a witness.

Defendant argues that this error was not harmless and that reversal is required. He observes that the court allowed the prosecution to read Jones's preliminary examination testimony into the record, and contends that the admission of this testimony greatly advantaged the prosecution

because Jones was not cooperating with the prosecution's version of the facts. Defendant also argues that he was prejudiced because the jury was unable to evaluate Jones's credibility or observe any inconsistencies in her testimony from the reading of the preliminary examination transcript.

To start, defendant has not shown that these events gave rise to a violation of his constitutional right to confrontation. Both the United States and Michigan Supreme Court have held that the Confrontation Clause does not "bar the admission of a prior testimonial statement 'so long as the declarant is present at trial to defend or explain it.' " *Sardy*, 318 Mich App at 563, quoting *Crawford v Washington*, 541 US 36, 59 n 9; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Here, defendant was not only able to cross-examine Jones at her preliminary examination, but Jones was present at trial and was thoroughly cross-examined by defense counsel at that time as well. Defense counsel sought to impeach Jones using her preliminary examination testimony and the statement she gave to the police. Jones was also cross-examined by defense counsel at the preliminary examination. The jury was presented with Jones's cross-examination testimony regarding any inconsistent statements or lack of memory. Therefore, defendant was not deprived of the opportunity to undermine the allegations against him, nor was he deprived of an opportunity to impeach Jones's credibility. *Sardy*, 318 Mich App at 566.

That said, as earlier noted, the trial court committed evidentiary error by declaring Jones an unavailable witness and admitting her preliminary examination testimony under MRE 804. Given, however, the testimony Jones provided at trial, including defense counsel's cross-examination of her, as well as the other, very substantial evidence of defendant's guilt that was presented at trial and untainted by any such error, defendant has not shown that "it is more probable than not that the error was outcome-determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).[1] Accordingly, reversal is not required.

## B. FAIR TRIAL

Defendant next argues that he was denied a fair trial by Jones's mistaken invocation of the Fifth Amendment right against self-incrimination. We disagree.

Because defendant failed to preserve this issue, we review this claim under the plain error rule. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019) (quotation marks and citation omitted). Establishing the third requirement "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 54. (quotation marks and citation omitted). "Reversal will only be warranted when the plain error leads to the conviction of an

---

[1] Indeed, given the circumstances, we would find the error harmless in this case even if it were constitutional in nature. See *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (explaining that, for such an error, "[t]his Court must conduct a thorough examination of the record in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error" (quotation marks and citation omitted)).

actually innocent defendant or when an error affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

Generally, calling a witness while knowing that the witness intends to claim the privilege against self-incrimination, or some other valid privilege against testifying, constitutes evidentiary error. *People v Giacalone*, 399 Mich 642, 645, 645 n 6; 250 NW2d 492 (1977). "The rationale for this rule is the adverse inference that may be drawn against the defendant by the jury from the claim of testimonial privilege." *People v Paasche*, 207 Mich App 698, 709; 525 NW2d 914 (1994). A constitutional error may also arise if a witness's claim of the privilege not to testify denies a defendant the right to confront the witness, or if a prosecutor attempts "to build its case out of inferences arising from use of the testimonial privilege" to an extent that "denies the defendant a fair trial in violation of due process." *People v Gearns*, 457 Mich 170, 186-189; 577 NW2d 422 (1998) (quotation marks and citation omitted), overruled on other grounds by *People v Lukity*, 460 Mich 484, 494; 596 NW2d 607 (1999). The prosecutor's actions must "amount to a deliberate attempt to 'make capital' out of the refusals to testify." *Gearns*, 457 Mich at 188.

In the instant case, there was no evidence that the prosecution called Jones as a witness knowing that she would invoke the Fifth Amendment. Additionally, Jones's invocation of the right did not deprive defendant's right to cross-examine her, as Jones was thoroughly cross-examined by defense counsel. And although it is not a determining factor, we note that Jones did not have a valid claim of privilege pursuant to the Fifth Amendment. She erroneously claimed the privilege because she did not want to testify. The trial court informed Jones that she did not have the right to claim the privilege and must testify. As noted, Jones testified and was cross-examined by defendant. Thus, Jones's mistaken claim of privilege did not constitute evidentiary error, nor was defendant deprived of a fair trial or his constitutional right to confrontation. Accordingly, defendant's argument must fail.

## C. DIRECTED VERDICT

Defendant argues that the trial court erred by denying his motion for directed verdict even though the prosecution failed to present sufficient evidence to support convicting him of AWIGBH and AWIGBH by strangulation. We disagree.

Defendant moved for a directed verdict in the trial court as to the count of AWIGBH by strangulation, but not as to the other count of AWIGBH. Therefore, this issue is only partially preserved. This Court reviews a trial court's decision whether to deny a motion for directed verdict de novo. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). We review "the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). However, because defendant failed to move for a directed verdict as to the AWIGBH charge, we will review that alleged error under the plain error rule. *Anderson*, 341 Mich App at 279.

As to the crimes of AWIGBH and AWIGBH by strangulation, MCL 750.84 provides, in relevant part:

(1) A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:

(a) Assaults another person with intent to do great bodily harm, less than the crime of murder.

(b) Assaults another person by strangulation or suffocation.

(2) As used in this section, "strangulation or suffocation" means intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person.

The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). The elements of AWIGBH by strangulation are: (1) an assault, and (2) the intentional "impeding [of] normal breathing or circulation of the blood by applying pressure on the throat or neck . . . ." MCL 750.84(1)(b), (2). "Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent." *Stevens*, 306 Mich App at 629 (citations omitted).

Defendant argues that the prosecution failed to present sufficient evidence to support a conviction of strangulation. He maintains that Jones's testimony regarding the alleged choking was inconsistent, and that she failed to provide any details regarding the nature of the alleged choking or her inability to breathe. However, defendant ignores that a trial court cannot "determine the credibility of witnesses in deciding a motion for a directed verdict of acquittal, no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). Thus, to the extent that defendant claims Jones was not credible, we note that her credibility had no bearing on whether a directed verdict should have been granted.

We also note that additional trial testimony supported the prosecutor's case, and thus indicates that defendant was not entitled to a directed verdict. Eyewitness David Fuller testified that he saw defendant restraining and choking Jones while trying to push her into the vehicle. Fuller explained that defendant's hand was around Jones's neck and demonstrated with his hand forming a grip in the shape of a "c." Fuller heard Jones asking for help to prevent defendant from putting her back in the car because she thought defendant was going to kill her. Viewing the evidence in a light most favorable to the prosecutor, a rational trier of fact could have found that the essential elements of AWIGBH by strangulation were proven beyond a reasonable doubt. *Chelmicki*, 305 Mich App at 64.

Defendant also argues that the prosecution failed to provide sufficient evidence of his second conviction of AWIGBH because there was no evidence of any threatening words or aggressive behavior from defendant. Defendant also argues that no evidence was presented of physical marks or visible injuries. Contrary to defendant's argument, Fuller testified that Jones

looked "roughed up" and stated that she had marks on her arms and face. Fuller also observed that Jones's lip was bleeding. Fuller witnessed defendant attempt to pick Jones up and bodily force her back into the car three times. Jones testified that she did not want to get into the car with defendant because she was afraid of him, and that, while she was driving, he grabbed the steering wheel and jerked it toward the median. Jones also testified that before she and defendant left his apartment, defendant threatened her and took her shoes, wallet, phone, and keys in an effort to stop her from leaving. Jones stated that she ran from defendant across the freeway because she was afraid he was trying to kill her. Additionally, at the preliminary examination, Jones testified that defendant dragged her on the concrete when she was on the freeway and scraped her arms. Jones also testified that defendant punched her in the stomach. With regard to his conviction of AWIGBH, defendant has failed to demonstrate error, let alone plain error that affected his substantial rights. *Bailey*, 330 Mich App at 53-54.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani